FILED

2005 Oct-26  PM 02:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WANDA WHITE,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-04-BE-2329-S** |
| | ] | |
| **ALLSTATE INSURANCE CO.,** | ] | |
| | ] | |
| **Defendant.** | ] | |
| | ] | |

## MEMORANDUM OPINION

## I. INTRODUCTION AND FACTUAL BACKGROUND

This case is currently before the court on a motion for summary judgment (doc. # 23), supporting brief (doc. # 24), and supporting evidentiary material (doc. # 25) filed by defendant Allstate Insurance Company.  Plaintiff Wanda White filed an objection to the motion for summary judgment (doc. # 29) and subsequently filed evidentiary submissions in opposition to the motion for summary judgment (doc. # 30).

Having reviewed the briefs and evidence submitted by both parties, the court concludes that the defendant's motion for summary judgment is due to be GRANTED in part and DENIED in part.  The court specifically finds that the motion for summary judgment is due to be (1) DENIED on the plaintiff's Title VII and 42 U.S.C. § 1981 disparate discipline claims alleging that Allstate's decision to place her on "Requires Improvement" status ("RI") was motivated by race; (2) GRANTED on the plaintiff's Title VII disparate discipline claim alleging that Allstate's decision to place her on "Job in Jeopardy" status ("JIJ") was motivated by race; and (3)

1

GRANTED on the plaintiff's Title VII claim alleging that Allstate's decision to place her on "Job in Jeopardy" status ("JIJ") was in retaliation for filing a complaint with the EEOC.

Plaintiff, Wanda White, an African-American female, is currently employed by Allstate Insurance Company as a claims processing specialist in Allstate's Birmingham claims office. White began working for Allstate on August 12, 2002.

During the first eight weeks of employment, Allstate employees undergo training and are governed by an attendance policy designed specifically for trainees.  The trainee status attendance policy provides that each day off without approval is counted as an absence.  Allstate employees are governed by a progressive disciplinary policy for attendance violations.  Specifically, after the third absence, the policy indicates that the trainee should be placed on "Requires Improvement" (RI) status.  After the fourth absence, the policy indicates that the trainee should be placed on "Job in Jeopardy" (JIJ) status.  Lastly, the policy provides that the fifth absence may lead to termination.

After completing the first eight weeks of employment, Allstate employees are governed by a less stringent attendance policy.  For example, the attendance policy for White's department provides that employees incurring five occurrences or absences under the policy lead to RI status; six occurrences or absences lead to JIJ status; and seven occurrences or absences may lead to termination.

 During her first year of employment but after the eight week training period, White incurred several unscheduled absences necessitated by her daughter's sickle cell anemia.  Plaintiff was ineligible for FMLA leave during her first year of employment with Allstate.

On April 24, 2003, plaintiff was placed on RI status after incurring six non-scheduled,

non-protected absences.  White admits to incurring the absences that eventually resulted in her placement on RI status.  An employee on RI status cannot apply for other positions.  Furthermore, all employees, even if not on RI status, are required to have one year of employment before applying for open positions.

On August 12, 2003, White completed her first year of employment with Allstate and consequently, was eligible for FMLA leave.  However, because of her RI status, the plaintiff was still unable to apply for open positions within the company.

On September 9, 2003, as she was leaving work, plaintiff was involved in an incident with a white employee, Jason Ritchey.  According to White, Ritchey threatened her, used profane language, and raised his arm to strike her.  The morning of the next day, September 10, 2003, Allstate conducted an investigation of the incident between Plaintiff and Ritchey and interviewed all of the witnesses to the incident.

Allstate's investigation revealed that, although plaintiff and Ritchey both accused each other of making threats and denied making any of their own, other witnesses reported that both White and Ritchey made verbal threats against each other.  As a result of the incident, both plaintiff and Ritchey received the same discipline: an indefinite JIJ.

White returned to work on Monday, September 15, 2003, after requesting a few days of personal leave.   On that day, White met with supervisory employee Randy Mitchell who informed her that, as a result of the investigation, she and Ritchey would both be placed on JIJ status.  After the decision had been made to place the plaintiff and Ritchey on JIJ status, Mitchell completed the appropriate paperwork and, on September 17, 2003, sent it to human resources for approval.

3

On September 22, 2003, White filed a charge of race discrimination against Allstate based on its decision to place her on RI status.  According to White, Brandy Henderson, a white employee, had a worse attendance record than plaintiff, but was not placed on RI status.  White alleges that Henderson accumulated five non-scheduled absences and six unpaid absences during the initial eight week training period.

Pursuant to Allstate's trainee attendance policy, White alleges that Henderson should have been placed on RI status after her third absence, placed on JIJ status after the fourth absence, and terminated after the fifth absence.  Because she was not placed on RI status after her third absence, Henderson was able to apply for and receive a job as an Auto Tech Processor, a position that the plaintiff alleges that she would have applied for but for her RI status.

On September 23, 2003, plaintiff was removed from RI status and once again eligible to apply for open positions.  However, approximately one month later on October 21, 2003, White was officially placed on JIJ status for her involvement in the parking lot incident with Jason Ritchey.  Plaintiff filed an amended charge of discrimination on November 17, 2003 alleging that Allstate's  decision to place her on JIJ status was in retaliation for filing a complaint with the EEOC and race discrimination.

White filed suit in this court on July 28, 2004 seeking injunctive relief, including being placed in the position Ms. Henderson received and what plaintiff claims is the difference in pay between what she has been paid and what she would have been paid had she received the position Ms. Henderson received.  The plaintiff also seeks compensatory and punitive damages.

## II. STANDARD OF REVIEW AND LEGAL FINDINGS

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows

a trial court to decide cases where no genuine issues of material facts are present.  Fed. R. Civ. P.

56.  Disagreement between the parties is not significant unless the disagreement presents a

"genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

*See also, Celotex v. Catrett*, 477 U.S. 317, 327 (1986).  A factual dispute is genuine where "the

evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson*, 477 U.S. at 251-52.  In opposing a motion for summary judgment, "a party may not

rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs,*

*Local* 675, 794 F.2d 641, 643 (11th Cir.1986).  Furthermore, mere verification of a party's own

conclusory allegations is not sufficient to defeat a motion for summary judgment.  *Fullman v.*

*Graddick*, 739 F.2d 553 (11th Cir. 1984).

Having reviewed the briefs and evidence submitted by both parties and construing the

facts in the light most favorable to the plaintiff, the court concludes as follows:

(1) The court concludes that the motion for summary judgment is due to be DENIED on

the plaintiff's Title VII disparate discipline claim relating to Allstate's April 24, 2003 decision to

place her on RI status.  In its motion for summary judgment, Allstate makes three primary

arguments.[1]  First, it argues that placement on RI status is not an adverse employment action

because it does not satisfy the threshold level of substantiality required in the Eleventh Circuit.

*See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001) (holding that a

_____

[1]In its brief, the defendant concedes that plaintiff is a member of a protected class and that she
was a qualified employee.  *See Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842-843 (11th Cir.
2000) (holding that to establish a prima facie case of disparate treatment, a plaintiff must prove that: (1)
she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her
employer treated similarly situated employees outside of her protected class more favorably; and (4) she
was qualified for the job benefit at issue.).

plaintiff satisfies the threshold level of substantiality by presenting evidence of a serious and material change in the terms, conditions, or privileges of employment); *see also, Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1452 (11th Cir. 1998) (holding that the adversity must be material; it is not enough that [the action] imposes some *de minimis* inconvenience of responsibility.)  According to Allstate, the Auto Tech position for which White claims she would have applied had she not been on RI status would not have been a promotion.  Allstate argues that "Auto Tech Processors were Claims Processing Specialists.  They were paid and classified as Claims Processing Specialists."

The court disagrees.  Given the facts of this case, White has presented sufficient evidence that her placement on RI status was an adverse employment action.  Even accepting the defendant's argument that the auto tech processor position was a lateral one, the undisputed evidence indicates that the plaintiff was absolutely precluded from applying for **any** vacant job for approximately five months, even after the completion of her first year of employment with Allstate.  Based on these undisputed facts, a juror could reasonably conclude that White's inability to apply for **any** open position, even one that could be characterized as a non-lateral position, was a serious and material change in the terms, conditions, and privileges of employment sufficient to satisfy the Eleventh Circuit's threshold level of substantiality.

Second, the defendant argues that the plaintiff cannot identify a similarly-situated comparator.  Evidence that similarly situated employees are disciplined more leniently raises the inference that a workplace rule was discriminatorily applied, and consequently, is admissible to support a disparate treatment claim.  *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1186 (11th Cir.1984).  To prove that employees are "similarly situated," White must show

that the comparator employees are "involved in or accused of the same or similar conduct" yet are disciplined in a different, more favorable manner. *Anderson v. WBMG-42*, 253 F.3d 561, 564 (11th Cir. 2001).

Allstate argues that Henderson is an inappropriate comparator because her absences, unlike the plaintiff's, occurred during her training period. Although not disputing the number of absences incurred by Henderson, the defendant argues that its practice of not accelerating employee discipline prevented it from terminating Henderson despite her excessive absences during the training period. According to Allstate, it does not accelerate the discipline for attendance up to termination without a warning. Consequently, from the pattern of Henderson's absences, she would have been warned about her attendance at about the time she was through with her initial training period, thus, leaving Allstate with insufficient time to obtain necessary approval from human resources for termination before the expiration of Henderson's eight week training period.

Although White's placement on RI status was based on absences incurred after the initial training period while Henderson's were incurred during the initial training period, the two employees were irrefutably disciplined for similar conduct – i.e., violation of the company's attendance policy. When determining if two employees are similarly situated, the court examines similar conduct, not identical conduct. *See Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (indicating that a comparator's conduct must be nearly identical to that of the plaintiff's). The parties also agree that Allstate did not follow its own trainee attendance policy in calculating Henderson's absences while it stringently enforced its post-trainee attendance policy in calculating White's absences. The parties also agree that Henderson and

7

White were hired around the same time, held the same position, and were both governed by Allstate attendance policies.

Given the irrefutable evidence that White and Henderson received differential punishments for violating the company policy on absences, Henderson and the plaintiff are similarly situated for purposes of establishing a *prima facie* case of disparate or discriminatory discipline.

Lastly, Allstate argues that White cannot establish that its non-discriminatory, race-neutral reason for her placement on RI status (i.e., violation of its policy on absences) was a pretext for racial discrimination.  A plaintiff can demonstrate pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence." *Hamilton v. Montgomery County Bd. of Educ.*, 122 F. Supp. 1273, 1281 (M.D. Ala. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).  More importantly given the facts of this case, a plaintiff may utilize comparator evidence of the differential application of the work-place rules to establish pretext.  *See Walker v. Mortham*, 158 F.3d 1177, 1184 n. 10 (11th Cir. 1998); *Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir. 1985).

 In this case, the inconsistency between the defendant's methodology of calculating Henderson's absences, in direct contravention of its written employment policies, casts doubt on the defendant's purportedly race-neutral explanation for the plaintiff's placement on RI status. Consequently, the court concludes that White has presented sufficient evidence of pretext to survive a motion for summary judgment.   Accordingly, the defendant's motion for summary judgment is due to be DENIED on the plaintiff's Title VII disparate discipline claim relating to

her placement on RI status.

(2). However, the court concludes that the motion for summary judgment is due to be GRANTED on the plaintiff's Title VII disparate discipline claim relating to Allstate's October 21, 2003 decision to place her on JIJ status.   For purposes of its motion for summary judgment, Allstate concedes that White's placement on JIJ status was an adverse employment action. However, the defendant argues that it is still entitled to summary judgment because White cannot identify a similarly-situated employee who was treated less favorably.

In opposing the motion for summary judgment, White concedes that she and Ritchey both received the same punishment for their September 9, 2003 altercation.  However, the plaintiff argues that she **should not** have received the same discipline as Ritchey because she did not instigate the incident.  In essence, plaintiff seeks to impose Title VII liability on Allstate based on similar treatment.

The court agrees with the defendant that it is entitled to summary judgment on this claim. The parties agree that Allstate's investigation of the incident revealed that, although plaintiff and Ritchey both accused each other of making threats, other witnesses reported that both White and Ritchey received the same discipline: an indefinite JIJ.  Given the similarity of treatment, the inference of discrimination does not attach to Allstate's decision to place White on JIJ status. *Cf., Nix*, 738 F.2d at 1186 (holding that evidence that similarly situated employees are disciplined more leniently raises the inference that a workplace rule was discriminatorily applied); *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000) (holding that "it is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not [discriminatory]").  Accordingly, the defendant's motion for summary judgment

9

is due to be GRANTED on the plaintiff's disparate treatment claim relating to her placement on JIJ status.

(3) The court also concludes that the motion for summary judgment is due to be GRANTED on the plaintiff's Title VII claim alleging that Allstate's decision to place her on JIJ status was in retaliation for filing a complaint with the EEOC.  To establish a prima facie case of retaliation, plaintiff must establish that (1) she engaged in a statutorily protected expression; (2) she was subjected to an adverse employment action; and (3) there is a causal link between the adverse employment action and the protected activity.  *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

At issue in this case is the plaintiff's ability to establish a causal connection between the protected activity (filing a complaint with the EEOC) and the adverse employment action (placement on JIJ status).  To prove the required causal connection for a prima facie case of retaliation, a plaintiff must show that the employer's adverse employment actions were motivated by an intent to retaliate against her for engaging in the statutorily protected conduct.  *Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir. 1992).  This is impossible when the evidence reflects that the alleged retaliators had no knowledge of the protected activity.  *See, e.g., Brochu v. City of Riviera Beach,* 304 F.3d 1144 (11th Cir. 2002).

In its motion for summary judgment, the defendant argues that the requisite causal connection has not been satisfied because plaintiff was placed on JIJ status approximately one week **before** the September 22, 2003 filing of her EEOC charge.   Given the above-referenced chronology, Allstate argues that the plaintiff cannot establish a causal link between the protected activity and the adverse employment action.  Furthermore, in its reply brief, the defendant

contends that Mitchell drafted the document placing White on JIJ status on September 17, 2003, days before the filing of the EEOC charge.

White vehemently objects to the above-referenced chronology.  Although conceding that she knew of the defendant's intention to place her on JIJ status on September 15, 2003, plaintiff nevertheless argues that the court should use October 21, 2003 (approximately one month after the filing of her EEOC charge) as the relevant date for establishing the causal connection because that is the date when the decision was finalized.  Based on this premise, White implicitly argues that the decision to place her on JIJ status could have been affected by the September 22, 2005 filing of her charge of discrimination.

The plaintiff does not provide the court with any case law authority in support of the above-referenced position.  Furthermore, White's theory of liability contradicts her sworn deposition testimony.  For example, the plaintiff's own deposition testimony indicates that in he September 15, 2003 meeting with Mitchell she was definitively told that she would be placed on JIJ status, and that Mitchell was simply waiting for formal approval from Allstate's human resources department.[2]

Without any evidence that Allstate's decision to place White on JIJ status was not finalized on September 15, 2003, a reasonable juror could not conclude that Allstate's decision to place the plaintiff on JIJ status was in retaliation for her filing a charge of discrimination with the EEOC.  *Cf., Ricks v. Delaware State Coll.*, 449 U.S. 250, 258 (1980) (holding that the proper focus in computing the limitations period for statute of limitations purpose is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most

---

[2]*See* Pl's Dep., p. 175.

painful).

### III. CONCLUSION

Based on the foregoing analysis, the court concludes that the motion for summary judgment is due to be GRANTED in part and DENIED in part.  A separate, final order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 26th day of October, 2005.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE